1  The Ingber Law Group
   Jason M. Ingber (SBN 318323)
2  3580 Wilshire Blvd., Suite 1260
   Los Angeles, California 90010
3  T:310-270-0089
   E-mail: ji@jasoningber.com
4
   Attorney for Plaintiffs
5

6

7              **UNITED STATES DISTRICT COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9

10 Alejandro   Nunez,   Alex   Williams,  )   Case No.:
   Alexandra Sierra, Asan Sapenov, Billy )
11 La, Brendon Wong, Callie Williams, )      **CLASS ACTION COMPLAINT**
   Cecilia Valenzuela, Charles Abrenica, )   **FOR:**
12 Christopher Tanton, Danny Gallegos, )
   Dennis Benko, Dinar Muratov, Edward )
13 Mitoma, Glenn Caro, Jessyka Matthews, )      1. **Violation of the Sherman**
   Jesus Perez, John Llanos, Jose Escobar, )        **Act 15 U.S.C. § 2 (Tying)**
14 Kevin Lively, Kim Chan, Kuldeep )
   Dhaliwal, Kynan Barrios, Minerva )
15 Alcala, Mozhgan Samiei, Nasreen )            2. **Violation of the Cartwright**
   Suleman, Navid RezaKhah Khadem, )              **Act Cal. Bus. & Prof. Code,**
16 Ramzan Madaev, Ravi SeKhar Menta, )           **§ §16720 16727**
   SriKanth Reddy Terupally, Shawn Hall,
17 Timothy Johnson, Vitali HaradzetsKi,
   Will Plummer, Edgar Arnott, Roman            3. **Monopolization of Retail**
18 Oulko, Gary Alan Curiel, Kayla                  **Hydrogen in Violation of**
   Rodriguez, Richard Yap, Ahmad Razavi,            **the Sherman Act § 2**
19 Peter Robert Nichols Jr., Leonel Diaz,
   Ann Thomas, Brian Elliot Turnauer,
20 Signe Kiesel, Lonnie Sarcos Jr., Hannah       4. **Violation of Magnuson Moss**
   Baker, Charles Wolff, William Viteri,           **Act – Implied Warranty**
21 Kendra Neuberger, Zachary Sherry,
   Veronica Delgado, Seema Khadim,
22 Margarita Camarena, Christine Gellel,
   Judy Hwang, Deven Perkins, Juan
23 Hernandez, Sairoong Anne Kim, Dietra
   Yvonne Hill, Rosa Rodriguez, Hector
24 Palominos, Enrique Silva, Daniel
   Rodriguez, Katherine Breslin, Petr
25 Perminov, Suzanne Bash, Rajesh Mahat,
   Jason Boatright, Philip Pang, Angela
26 Zamora, John Ho, Kevin Williams,
   Hadeel Alarqan, Robert Watkins, Robert
27 Adamson, Leticia Morales, Brian
   Martinez, JoAnn Trotter, Hyung Ah
28 Kim, Aleksey Oulko, Bill Citelly,
   Candice Hemsley, Mohammed Aledlah,

                        - 1 -
                **CLASS ACTION COMPLAINT**

Larry Jung, Rhina Reese, Vince Rodriguez, Akbar Saidakramov, Nanci Lisseth Saidakramov, Jose Luis Perez, Oscar Lucas, Pier Angela Ali, Javed Ahmad, Stephanie Hardesty, Wolf Wigo, Siddhartha Sharma, Christopher Cruz, Elizabeth Rhodes, Aaron Gates, Wesley Johnson, Danielle Pigneri, Lidia Mendoza, Erika Berenice Rosas Ramirez, Hugo Aguilar, Saud Chaudhry, Samuel Antonio D'Anna, Pedro Martinez Sanchez, Michael Hernandez, Khuong Phamdang, Jose Lopez, Josh Choi, Ryan Cessna, Erika Cessna, Maria Carillo, Jose Huerta, Denise Artukovich, Darren Jireck, Youngjin Kim, Glenys Lisseth Caro Ramos, Chenaniah Wondercheck, Jennifer Do, Miguel Mendoza, Francisco Calzada, Afroza Haque,

Grant Davis, Deisy Espinoza, Christina Leno, Jose De Jesus Vazquez Garcia, Trina Marie Innocenzi, Mariela Rodriguez, Bertha Briseno, Feliciano Guzman Moreno, Jessica Bui, Andi Woo, Matt McElearney, Amir Mohebbi, Issam Eljamal, Jackie Kolpa, Ivan Tapia-Rodriguez, Oscar Javier Tolentino, Jorge Perez de Tagle, Shayan Shahidi Zandi, Raul Ulloa, Michael Choyce, Robert Ferdan, Surya Iyer, Luis Padilla, Mehdi Mahmoodi, Mo Said, Jenny Ruiz, Azzam Yasseen, Maria Rodriguez, Kyle Domenic Cayce, Amanda Reeves, Luilly Martinez, Virginia Cruz, Ye Lu, Quentin Wu, Guadalupe Avalos, Saeid Eshraghi Tehrani, Leonid Pasechnik, Elodia Trabelsi, Kenneth Contreras, Abraham Rodriguez, Ang Li, Alejandro King, Takumi Noh, Silvestre Solano, Joanne Qiu, Jose Avalos, Seoungwan Noh, Luz Myriam Montanez Lara, Mark Fisher, Miguel Angel Goyes, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

Toyota Motor Sales, U.S.A. Inc., First Element, Inc. a California corporation, and DOES 1 through 5, inclusive,

Defendants.

**CLASS ACTION COMPLAINT**

Alejandro Nunez, Alex Williams, Alexandra Sierra, Asan Sapenov, Billy La, Brendon Wong, Callie Williams, Cecilia Valenzuela, Charles Abrenica, Christopher Tanton, Danny Gallegos, Dennis Benko, Dinar Muratov, Edward Mitoma, Glenn Caro, Jessyka Mathews, Jesus Perez, John Llanos, Jose Escobar, Kevin Lively, Kim Chan, Kuldeep Dhaliwal, Kynan Barrios, Minerva Alcala, Mozhgan Samiei, Nasreen Suleman, Navid RezaKhah Khadem, Ramzan Madaev, Ravi SeKhar Menta, SriKanth Reddy Terupally, Shawn Hall, Timothy Johnson, Vitali HaradzetsKi, Will Plummer, Edgar Arnott, Roman Oulko, Gary Alan Curiel, Kayla Rodriguez, Richard Yap, Ahmad Razavi, Peter Robert Nichols Jr., Leonel Diaz, Ann Thomas, Brian Elliot Turnauer, Signe Kiesel, Lonnie Sarcos Jr., Hannah Baker, Charles Wolff, William Viteri, Kendra Neuberger, Zachary Sherry, Veronica Delgado, Seema Khadim, Margarita Camarena, Christine Gellel, Judy Hwang, Deven Perkins, Juan Hernandez, Sairoong Anne Kim, Dietra Yvonne Hill, Rosa Rodriguez, Hector Palominos, Enrique Silva, Daniel Rodriguez, Katherine Breslin, Petr Perminov, Suzanne Bash, Rajesh Mahat, Jason Boatright, Philip Pang, Angela Zamora, John Ho, Kevin Williams, Hadeel Alarqan, Robert Watkins, Robert Adamson, Leticia Morales, Brian Martinez, JoAnn Trotter,   Hyung Ah Kim, Aleksey Oulko, Bill Citelly, Candice Hemsley, Mohammed Aledlah, Larry Jung, Rhina Reese, Vince Rodriguez, Akbar Saidakramov, Nanci Lisseth Saidakramov, Jose Luis Perez, Oscar Lucas, Pier Angela Ali, Javed Ahmad, Stephanie Hardesty, Wolf Wigo, Siddhartha Sharma, Christopher Cruz, Elizabeth Rhodes, Aaron Gates, Wesley Johnson, Danielle Pigneri, Lidia Mendoza, Erika Berenice Rosas Ramirez, Hugo Aguilar, Saud Chaudhry, Samuel Antonio D'Anna, Pedro Martinez Sanchez, Michael Hernandez, Khuong Phamdang, Jose Lopez, Josh Choi Ryan Cessna, Erika Cessna, Maria Carillo, Jose Huerta, Denise Artukovich, Darren Jireck, Youngjin Kim, Glenys Lisseth Caro Ramos, Chenaniah Wondercheck, Jennifer Do, Miguel Mendoza, Francisco Calzada, Afroza Haque, Grant Davis, Deisy Espinoza, Christina Leno, Jose De Jesus Vazquez Garcia, Trina Marie Innocenzi, Mariela Rodriguez, Bertha Briseno, Feliciano Guzman Moreno, Jessica

**CLASS ACTION COMPLAINT**

Bui, Andi Woo, Matt McElearney, Amir Mohebbi, Issam Eljamal, Jackie Kolpa, Ivan Tapia-Rodriguez, Oscar Javier Tolentino, Jorge Perez de Tagle, Shayan Shahidi Zandi, Raul Ulloa, Michael Choyce, Robert Ferdan, Surya Iyer, Luis Padilla, Mehdi Mahmoodi, Mo Said, Jenny Ruiz, Azzam Yasseen, Maria Rodriguez, Kyle Domenic Cayce, Amanda Reeves, Luilly Martinez, Virginia Cruz, Ye Lu, Quentin Wu, Guadalupe Avalos, Saeid Eshraghi Tehrani, Leonid Pasechnik, Elodia Trabelsi, Kenneth Contreras, Abraham Rodriguez, Ang Li, Alejandro King, Takumi Noh, Silvestre Solano,  Joanne Qiu, Jose Avalos, Seoungwan Noh, Luz Myriam Montanez Lara, Mark Fisher, Miguel Angel Goyes, individually and on behalf of all others similarly situated ("Plaintiffs"), bring this Complaint against defendants Toyota Motor Sales, U.S.A., Inc. and First Element, Inc., and DOES 1 through 5 ("Defendants") and allege on behalf of themselves and all California taxpayers and, all consumers that purchased the below described vehicle as follows:

<u>**GENERAL ALLEGATIONS**</u>

1.      Toyota spins a web of lies and exerts unprecedented nefarious control over Californians.  Toyota wastes millions of dollars of taxpayer money, pollutes the environment and abuses consumers for over a decade with their hydrogen fueled car, the "Mirai".

2.      Toyota has undisputable market dominance in the hydrogen retail car market; it's not even close.

3.      Toyota has sold over 14,000 of their hydrogen powered Mirais in California.

4.      The next highest seller of hydrogen retail cars is Hyundai who sold 1,500 "Nexos", their hydrogen fueled car.  Honda sold similar figures to Hyundai of their hydrogen fueled model "Clarity" and they discontinued their hydrogen vehicle over three years ago.   Hyundai and Honda were also careful to predominantly only lease their small fleet of hydrogen cars as opposed to selling them like Toyota did.

5.      It is undeniable that Toyota is the only real player in the hydrogen fuel car market in the United States.

6.      In or around 2010, California State University, Los Angeles (the "University") obtained a California state government grant through faculty members that were interested in alternative energy research, so that the University could build a clean-energy hydrogen fuel station.  A grant was awarded and construction began.

7.      The University station had issues in construction, and so the University hired Michael Dray as the station and project manager.

8.      There was primarily a pulsation issue with the hydrogen pumps, and it took Michael Dray over a year to fix this issue.

9.      The University pump was approved by the California Division of Measurement Standards (DMS) and they received a literal seal of approval.  By 2011, the University declared that the station was safe, operational, and open to the public.  Vehicles began fueling at the University pump.

10.     The University's hydrogen fuel station earned this seal of approval by passing rigorous tests for accuracy as to amounts dispensed and amount charged to customers; fire system protections; and more.

11.     In sum, the University had a literal seal of approval from the state of California to sell hydrogen to the public.

12.     After this awarded approval, the University's fuel station was added to the website, h2fcp.org.  This website is the main news source/information for hydrogen fuel drivers to know where they can fuel their cars: the website holds itself out to provide real time data and maps for hydrogen stations that are "online" or operational, so drivers know where they can buy fuel.

13.     This website, h2fcp.org, is officially run by a weird creature called the Hydrogen Fuel Cell Partnership, formerly known as the "California Fuel Cell Partnership" and it's a weird creature because it's a quasi-governmental entity that is truly run by Toyota.

**CLASS ACTION COMPLAINT**

14.     Toyota forced the Hydrogen Fuel Cell Partnership to remove the University's fuel station off the website h2fcp.org soon after the University station was approved and placed on the website.

15.     Michael Dray had a conference call with the Hydrogen Fuel Cell Partnership members about this removal, where a man named Spencer Quan, an engineering consultant that worked for Toyota, said, "well it takes a lot of guts to say you're [hydrogen station is] open to the public." To which Michael Dray responded, "but we are." And Spencer Quan replied, "no you're not, because Toyota vetoes that" and he then put pressure on the California Air Resources Board and other governmental actors to remove the University fuel station from the website.

16.     Michael Dray resisted because as a taxpayer, citizen, and public employee of the University, he knew that it was in the public interest that the University's $5 million station paid for by California taxpayers be made available for the public.

17.     Michael Dray received intense pressure from the California Air Resources Board to agree to be removed from the website.  It became increasingly explicit that if Toyota would not approve of the University station, then the University would have no customer base anyway, so he acquiesced to be removed from the website, with an agreement that Toyota would visit the University fuel station and eventually approve it and put it back on the website.

18.     Over the next five years Honda and Hyundai approved the use of the University fuel station for its drivers, but Toyota refused to approve the station or ever visit.

19.     In fact, Toyota attacked the University fueling station.

20.     Toyota did this primarily by retroactively imposing a new fueling standard called SAEJ260.

21.     This new fueling standard was not possible to meet and was intentionally unnecessarily unrealistically high.

- 6 -
**CLASS ACTION COMPLAINT**

22.     The fact that the standard was unnecessarily high was admitted to Michael Dray by a German engineer for BMW named Jesse Schnieder. Mr. Schnieder was working for BMW and he was a member of the committee of that retroactive fueling standard: There was an international hydrogen conference in Los Angeles that had a tour of the University hydrogen fueling station. Michael Dray performed a fueling for the folks on the tour, and he showed the spectators the temperature data in real time and all the safety parameters.  After watching the fueling demonstration, Jesse Schnieder verbally exclaimed that the imposed fueling standard was too strict and confided this again to Michael Dray.

23.     Then Mr. Schnieder did nothing about it for the same reason no one did anything about it: people were afraid of Toyota.

24.     Toyota's grip became so nefarious that numerous individual hydrogen station owners had a meeting to discuss what to do about Toyota's ironclad control and retroactive new standard, and at that meeting Michael Dray suggested that the station owners form an association, and the CEO of First Element agreed with Michael Dray.

25.     Nothing ever came from that meeting.

26.     Shortly thereafter, Toyota became a creditor to First Element for over $7.2 million.

27.     Consequently, the largest hydrogen station operator in California, with over 50% of the market share, is and was beholden to Toyota financially, as a debtor.

28.     From that point on, First Element (i.e. True Zero) stations were instantly approved, and added to the website overnight as they were built, but not the University station and others.

29.     When Toyota first came out with this new retroactive SAEJ260 standard, Toyota said they won't use it as a hammer, and it would serve only to enhance performance. Instead, Toyota did the exact opposite…

30.    Toyota forced the University to spend hundreds of thousands of taxpayer dollars over the years, to meet a standard that was nonexistent when the University hydrogen fueling station was built and approved by the state and other car manufacturers.

31.    The University spent time, and resources to change the electronic programming of the fuel dispenser to improve the tanks' chiller per Toyota's request (Honda actually provided the University a hydrogen chilling device to help the University meet Toyota's new retroactive standard).

32.    The University hired an engineer that worked for NASA's Jet Propulsion Laboratory to help meet each new request from Toyota over the years, which were all done exactly per Toyota's specifications. Throughout this time, Honda and Hyundai continued to allow their drivers to use this station, but Toyota did not.

33.    The harassment and threats by Toyota increased.

34.    Toyota, in meetings with their engineers, and Michael Dray and his consulting engineers, threatened to have the California government shut down the University fueling station, if the University didn't jump through all of their hoops.

35.    Toyota complained about the University's fuel station hours of operation.  The University wanted there to be a limit on hours so that they could afford to always have an attendant present to help people refuel, as refueling hydrogen is not intuitive, and even on its best day, an operable station will have some glitches.

36.    Toyota refused that line of logic, and required the University to keep their fueling station open 24/7 with no attendant present.

37.    Toyota insisted that a credit card reader be installed in the fueling pump even though the station had a card reader (paid for by tax payer money) that worked fine in their shop and could accept Toyota's fueling cards, however Toyota

continued to block the University fueling station to be on the website or sell fuel to its customers.

38.     Michael Dray fixed that and installed a credit card reader into the fuel dispenser which took over a year and more taxpayer money. Toyota continued to refuse to approve the University's station.

39.     On a parallel note, the University fuel station was forced to undergo rigorous testing.  However, a device to test these new impossible standards did not even yet exist, and so the University had to commission a device to test the fueling station as to the new retroactive standards.  The University created said testing device for tens of thousands of dollars to test moisture levels, and Toyota never visited to check on all these met tests and new devices.  Instead, they lobbed endless new demands on the University.

40.     Toyota imposed these retroactive standards on other stations as well.

41.     So, contrary to Toyota's comments that the retroactive standard wasn't going to be used as a weapon, they indeed weaponized the retroactive standard.

42.     Around this time, it became clear that no existing fueling station could meet the retroactive standard.  Yet, new True Zero stations were automatically approved.

43.     Toyota finally said they have no problem with the technical performance of the University fueling station but now Toyota became concerned with the capacity of the University fueling station because Toyota implied it was too small, as it could only fill 20 cars a day.  So, Toyota began to demand to see the University station's maintenance plans and parts that it kept in inventory.

44.     Michael Dray provided all these to Toyota, and still they refused to approve the University station to be on the website, or allow their drivers to fill up at the University station.

45.     Throughout these years thousands of Toyota Mirai drivers would pull into the University station and ask for fuel and Michael Dray had to turn them away.

**CLASS ACTION COMPLAINT**

People would drive in with kids in their car saying they were desperate because two or three other hydrogen stations they went to didn't have any hydrogen fuel and he had to send them back on the California highway with little or no fuel.

46.     One of the ways Toyota was able to control and block their customers from using stations they didn't approve of is because they lure their customers in with free hydrogen fuel cards.  These are debit cards that are provided to customers that purchase the Mirai and are cards that Toyota controls.

47.     Another way Toyota controls their customer drivers is Toyota threatens to void the warranty if they fuel up anywhere besides their approved stations.

48.     After these years and years and years of moving goal posts Michael Dray went to a meeting with the Fuel Cell Partnership at the headquarters of Honda in Torrance, where again Toyota publicly resisted providing their approval to the University even though Honda and Hyundai allowed their customers to use the station for years and had repeatedly openly approved of the University fueling station.

49.      At that point, Michael Dray went to the state of California Governor's Office of Business and Economic Development (GO-Biz) and said to Tyson Eckerle, the department's Senior Advisor for Clean Infrastructure and Mobility, that taxpayers paid for the University hydrogen fueling station and the taxpayers have gone through a fraud for the better part of a decade and if the station was not approved immediately for the website and use for Toyota customers, then he would go to the energy committees legislator with these fraud details.  Shortly thereafter, the University fueling station was approved by Toyota.

50.     Why did Toyota target and thwart the University fueling station for over seven years?

51.     One reason for the targeted harassment to the University was because the University was the only station making green hydrogen: The University was producing hydrogen from water.

**CLASS ACTION COMPLAINT**

52.     Toyota decided from the git-go that this green process was too costly. Toyota decided they were going to produce hydrogen fuel from carbon/fossil base methods.  This is a major betrayal to the California taxpayers.  Toyota argued for years and to this day that the production of hydrogen fuel from fossil fuels was only a temporary step to bridge the gap to producing hydrogen from water.  But it's been decades of these promises and still hydrogen fueled cars pollute the environment more than gas powered cars.

53.     Toyota continues with their marketing saying these Mirais are zero emission vehicles and instead engaged in brinkmanship with carbon credit purchases and layers of nefarious control.

54.     True Zero, which is owned by First Element and controls the most hydrogen stations in California advertises on their website to this day (and likely tomorrow and the next day) boldly: "Filling up your hydrogen vehicle is as easy as filling up a vehicle with gasoline or diesel fuel – only cleaner!".

55.     It is a complete lie and misrepresentation to juxtapose filling up a car with hydrogen to gas.

56.     For one, hydrogen fuel is 500x more complicated than filling a car with liquid fuel. Literally.

57.     More practically, the points of failure, temperature fluctuations during different times of the year, and innumerable other mechanical workings all contribute to a much longer than five minute fueling period for consumers.

58.     But this desire to market the hydrogen fuel process like gas is what drives Toyota and their actions. Toyota neglected to tell drivers of the complexities and difficulties associated with fueling from hydrogen stations and their ever-increasing retroactive regulations on hydrogen stations they were imposing.

59.     Toyota has a playbook for hydrogen that they have inflicted on other countries like Denmark, Scandinavia, and Germany, where you will find hundreds of abandoned Toyota Mirais and inoperable hydrogen stations collecting mothballs:

**CLASS ACTION COMPLAINT**

1) Toyota sells a government with a fraudulent bill of good that premised on a promise to make a greener future;

2) Toyota provides hydrogen fueled cars to key local politicians for free and lobby aggressively for taxpayer money;

3) Toyota enjoys revenue and customer data and hydrogen data it sucks up from their cars and stations;

4) Toyota abandons the hydrogen infrastructure and points fingers at everyone but themselves and leaves.

60.     Toyota is currently doing this to California, and it was a ripe target.

61.     Toyota sold the state of California that they had a plan to help the state meet its long term zero emissions goal with a car that was so clean you could drink the water exhaust from its tailpipe.

62.     Toyota gave key California state politicians a hydrogen car including the acting chairwoman for the California Air and Resources Board.

63.     Toyota enjoys support and taxpayer money via its aggressive lobbying in the form of extreme control, and tax rebates and credits for consumers, cash for consumers from the state of California paid for by the taxpayers, and more recently $106 million dollars of tax payer funds for their hydrogen fuel network ambitions; paid for by passing on this cost to the Mirai owners in the form of exorbitant fees charged by the Department of Motor Vehicles for registration.

64.     Toyota sells thousands of Mirais to consumers with an array of incentives to their dealers for selling these cars, and Toyota enjoys unjust revenue and utilizes the data generated from consumers to their benefit.

65.     When customers complain or sue Toyota, points their fingers at the hydrogen stations or other actors for failures.

66.     Toyota had their boot on the necks of each hydrogen station operator.

67.     Over a decade ago, Elon Musk called the unclean hydrogen that Toyota was creating as wasteful, impractical and worse for the environment, and Howard

**CLASS ACTION COMPLAINT**

Stern has not yet commented, but that's only because his staff has not yet put it on his radar.

68.     Toyota's monopolistic conduct violates the antitrust laws and harms consumers. Toyota is dominant in the Hydrogen Fueling Market, and has engaged in predatory and exclusionary conduct in furtherance of their monopolization, causing Plaintiffs and Class members to suffer substantial economic injury as a result of Toyota's competition reducing violations of law. This action seeks recovery for consumers' losses, taxpayers and Toyota's unlawful gains, and it seeks other appropriate equitable relief to prevent Toyota from continuing to leverage its market position, as the largest car manufacturer in the world and by far the largest hydrogen fuel car manufacturer in the world, to harm California consumers.

69.     But for Toyota's anticompetitive practices, consumers would have had more options in the fueling stations for their Mirais and other car manufacturers would have created more vehicles for consumers.  Those companies would have created fueling station options and vehicles that competed with Toyota on the merits of clean hydrogen, without being dependent on Toyota for sustainability. Because Toyota anticompetitively restrained competition in its efforts to obtain a monopoly on the hydrogen retail marker, competition was foreclosed. Ultimately, consumers suffered, and continue to suffer, as a result of Toyota's wantonly anticompetitive harmful conduct.

70.     Toyota and First Element have systematically exploited their dominant market position in the hydrogen retail market to engage in a deceptive and manipulative pricing scheme, artificially inflating the true cost of hydrogen cars and hydrogen fuel and reaping profits. Their predatory practices not only drives up the price of hydrogen fuel but also prevents consumers from obtaining fuel.

71.     The artificial suppression of other hydrogen stations and pricing manipulation is evidenced by the Mirai's lack of resale value, which consistently is less than 90% of the original purchase price. This stark disparity between the initial

cost and the residual value reveals that the advertised price is not the true value of the vehicle.

## CLASS ALLEGATIONS

72.    Plaintiffs bring this action on behalf of themselves and as representatives of all others who are similarly situated. Pursuant to Rules 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following class and subclass that are initially defined as follows:

**California Class: This class encompasses all California taxpayers from 2011 or as soon as Toyota began to receive benefits from the State of California for hydrogen while not producing clean hydrogen and blocking clean hydrogen paid for by taxpayers from entering the market.**

**Mirai Subclass: All consumers that own or ever owned a Toyota Mirai.**

73.    Excluded from both the class and subclass are: (a) any officers, directors, employees, executives, board members, and legal counsel of Toyota, First Element or either of its affiliates; (b) any judge assigned to hear the case (or spouse or family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorney of record in this case and Plaintiffs reserve the right to amend or modify the above class definition with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

74.    **Numerosity**: The Class is so numerous that joinder of all members is impracticable. The number and identity of the Classes' members are presently unknown to Plaintiffs. There are millions of people in the class and many thousands of people in the subclass.

**CLASS ACTION COMPLAINT**

75. **Common Questions Predominate**: There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. These common questions of law and fact exist as to all members of the class and predominate over the questions affecting only individual members of the class. The common questions which predominate over individual issues include, but are not limited to; (a) whether Toyota lied to the state of California for funding and control (b) whether Toyota did not approve clean hydrogen stations from entering the market; (d) whether Toyota and First Element knew their marketing was reliant on lies and to what extent; (e) whether the Mirai failed in other countries prior to any sales of the Mirai in California (f) whether Toyota and First Element have monopolies in their markets and whether they tied their products (g) whether Toyota and First Element's conduct was violative of California consumer statutes (h) whether the class is entitled to restitution, treble and punitive damages.

76. **Typicality**: Plaintiff's claims are typical of the claims of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Toyota and First Element engaged in a common conduct giving rise to the violations of the legal rights sought to be enforced uniformly by Plaintiffs and the Class members. Identical statutory violations, business practices and injuries are involved. Plaintiffs' claims are consequently representative of and co-extensive with the claims of Class members.

77. **Adequacy**: The named Plaintiffs are adequate representatives of the Class on whose behalf this action is prosecuted. Plaintiffs' interests do not conflict with the interests of the Class. Plaintiff has retained competent counsel with experience in class action litigation and will protect the interests of the Class in that there are no conflicts between his interests and the interests of the other class members. The named Plaintiff and his counsel have the necessary resources to litigate this action, and counsel has the experience and ability required to prosecute this case as a class action.

**CLASS ACTION COMPLAINT**

78.   **Superiority:** A class action is superior to any other available method for the fair and efficient group-wide adjudication of this controversy since individual joinder of all Class members is impracticable. A class action presents fewer management difficulties and provides the benefits of a single adjudication and comprehensive supervision by a single court.

79.   **Injunctive and Declaratory Relief:** Toyota and First Element's wrongful actions as alleged herein are uniform as to all members of the Class. Toyota and First Element has acted or refused to act on grounds that apply generally to the Class, so that final injunctive or declaratory relief is appropriate with respect to the Class as a whole.

## JURISDICTION AND VENUE

80.   This action arises under Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, and Section 4 of the Clayton Act, 15 U.S.C. § 15. The action seeks to recover treble damages or disgorgement of profits, interest, costs of suit, equitable relief, and reasonable attorneys' fees for damages to Plaintiffs and members of the Class resulting from Defendants' restraints of trade and monopolization of the hydrogen retail market described herein.

81.   This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1332 (class action diversity jurisdiction), and 1337(a) (antitrust); and under 15 U.S.C. § 15 (antitrust). The Court also has subject matter jurisdiction over the state-law unjust enrichment claims presented in this action under 28 U.S.C. 1367 (supplemental jurisdiction).

82.   This Court has personal jurisdiction over Toyota because it is subject to general jurisdiction in the State of California, where it maintains numerous holdings, offices and salespoints.  The scheme to monopolize alleged in this Complaint caused injury to persons throughout California, including in this District. Moreover, Toyota

also conducted substantial business from which the claims in this case arise in California and has agreed to personal jurisdiction in this Court.

83.     Venue is appropriate in this District under 15 U.S.C. § 15(a) (Clayton Act), 15 U.S.C. § 22 (nationwide venue for antitrust matters), and 28 U.S.C. § 1391(b) (general venue provision). Toyota transacts business within this District, and it transacts its affairs and carries out interstate trade and commerce, in substantial part, in this District.

## **FIRST CLAIM**

### **Violation of the Sherman Act 15 U.S.C. § 2 (Tying)**

84.     Plaintiffs incorporate all allegations in this complaint as though restated in this claim.

85.     Plaintiffs bring this claim individually and on behalf of the members of the Mirai Subclass against Defendants under federal law.

86.     The Sherman Act prohibits "monopoliz[ation of] any part of the trade or commerce.  15 U.S.C. §2.

87.     As detailed above, Toyota has unlawfully tied their Mirai to the First Element fuel through their fuel card. A market exists for both the tying (hydrogen retail car) and tied (hydrogen fuel) products respectively.

88.     Toyota has sufficient economic power in the tying market, the hydrogen retail car market, to affect competition in the tied market, hydrogen fuel. Defendants willfully and intentionally engage in predatory, exclusionary, and anticompetitive conduct with the design, purpose, and effect of unlawfully maintaining their market and monopoly power.

89.     The availability of the Mirais is conditioned on consumers purchasing fuel from Defendants. In other words, cons, raising fuel prices, consumers are coerced into purchasing fuel from Defendants by virtue of wanting to purchase the Mirai. This is anticompetitive tying conduct.  This is exacerbated by the fact that

consumers have no clue this is happening in the background and that their car will be reduced in value by 90% the second after they buy the car and fuel prices are raised.

90.     Defendants have sufficient economic power in their markets to coerce consumers into purchasing the hydrogen fuel that they steer consumers to and their conduct affects a substantial amount of commerce.

91.     Defendants used their market power to manufacture harmful hydrogen to the environment contrary to the state and taxpayers goals and desires.

92.     Plaintiffs and the other members of the Classes were harmed and Defendants' violation of the Sherman Act was a substantial factor in causing this harm.

## SECOND CLAIM

### Violation of the Cartwright Act Cal. Bus. & Prof. Code, § §16720 16727

93.     Plaintiffs incorporate all allegations in this complaint as though restated in this claim.

94.     Plaintiffs bring this claim individually and on behalf of the members of the California Class and Mirai Subclass against Defendants under California law.

95.     Defendants' acts and practices detailed herein violate the Cartwright Act, Cal. Bus. & Prof. Code § 16700 et seq., which prohibits, inter alia, the combination of resources by two or more persons to restrain trade or commerce, or to prevent market competition. (Cal. Bus. & Prof. Code, §§ 16720, 16726.).

96.     Defendants' acts and practices detailed herein violate the Cartwright Act, Cal. Bus. & Prof. Code § 16727, which makes it "unlawful for any person to lease or make a sale or contract for the sale of goods, merchandise, machinery, supplies, commodities for use within the State, or to fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods,

merchandise, machinery, supplies, commodities, or services of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of trade or commerce in any section of the State." (Cal. Bus. & Prof. Code, § 16727.).

97. Under the Cartwright Act, a "combination" is formed when the anticompetitive conduct of a single firm coerces other market participants to involuntarily adhere to the anticompetitive scheme.

98. The Cartwright Act also makes it "unlawful for any person to lease or make a sale or contract for the sale of goods, merchandise, machinery, supplies, commodities for use within the State, or to fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, merchandise, machinery, supplies, commodities, or services of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of trade or commerce in any section of the State." (Cal. Bus. & Prof. Code, § 16727.)

99. As detailed above, Toyota unlawfully tied their Mirais to their debtor First Element or other approved fueling stations.

100. Defendants have sufficient economic power in the tying market to affect competition in the tied market.

101. The availability of the Mirai is conditioned on customers purchasing fuel from Defendants. In other words, consumers are coerced into purchasing fuel from Defendants by virtue of wanting to purchase the Mirai.

102. The tying product, the Mirai, is separate and distinct from the tied products, the fuel required to be purchased by consumers because consumers such as Plaintiffs have alternative options for the fuel and would prefer to choose among

them independently from their decision to purchase Mirais. Defendants' unlawful tying arrangements thus tie two separate products that are in separate markets.

103.   Defendants have sufficient economic power in the market for to coerce consumers into purchasing fuel from Defendants.

104.   Defendants also used their market power to misuse taxpayer funds.

105.   Plaintiffs and the other members of the Class and Subclass were harmed and Defendants' violation of the Carwright Act was a substantial factor in causing this harm.

## THIRD CLAIM

### Monopolization of Retail Hydrogen in Violation of the Sherman Act § 2

106.   Plaintiffs incorporate all allegations in this complaint and as though fully restated in this cause of action.

107.   Toyota has willfully acquired and maintained monopoly power in the relevant Hydrogen Retail Market. Toyota, is the largest car manufacturer and by all measures the largest hydrogen fuel car manufacturer has the power to control prices and exclude competition in both the Hydrogen Retail Vehicle Market and Hydrogen Retail Fuel Market.

108.   Toyota has willfully acquired and maintained monopoly power in the Hydrogen Retail Vehicle Market and the Hydrogen Retail Fuel Market by means of predatory, exclusionary, and anticompetitive conduct. Such conduct includes, but is not limited to: (a) engaging in a scheme to exclude hydrogen stations from entering the market (b) weaponizing its market position to retroactively impose standards (c) market the vehicle as green when it's not (d) illicitly obtain taxpayer funds to further its goals (f) obtain data from consumers by means of deception.

109.   Toyota's destruction of competition caused antitrust injury to Plaintiffs and Class members by lobbying for taxpayer funds, misusing taxpayer funds, eliminating meaningful competition, pollution the environment in the name of

**CLASS ACTION COMPLAINT**

helping the environment and continuing to maintain its dominance to sell and profit off California consumers.

110.   Toyota wasted taxpayer funds by preventing the University from selling hydrogen to consumers for seven years.

111.   There are no legitimate pro-competitive or business justifications for the conduct alleged herein, and even if there were, the anticompetitive effects would far outweigh any possible pro-competitive effects.

112.   Toyota's acts and practices have continued to be anticompetitive in nature and tendency and constitute an unfair method of competition, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

113.   Toyota's conduct has had a substantial effect on interstate commerce..

114.   Plaintiffs and Class members have been, and will continue to be, injured in their property as a result of Toyota's conduct.

115.   Plaintiffs and Class members have suffered, and will continue to suffer, injury of the type that the antitrust laws were intended to prevent, including but not limited to: (a) higher costs for fuel; (b) depreciation of their vehicles; and (c) wasted taxpayer funds (d) more pollution.

116.   Plaintiffs and Class members seek an award of treble damages or, in the alternative, disgorgement of Toyota's ill-gotten gains. Plaintiffs also seek appropriate equitable relief to enjoin Toyota from continuing to engage in anticompetitive behavior to the detriment of consumers and to remedy the harms that Toyota's monopolization of the Hydrogen Fuel and Vehicle Markets has caused, including: (a) divestment of assets that would continue to entrench its monopoly power; and (b) requiring Toyota to stop selling their hydrogen vehicles to consumers (c) for Toyota to return all taxpayer funds and benefits they received or caused to be generated.

## **FOURTH CAUSE OF ACTION**

### **Violation of Magnuson Moss Act – Implied Warranty**

117.   Plaintiffs incorporate all allegations in this complaint and as though fully restated in this cause of action.

118.   Plaintiffs bring this claim individually and on behalf of the members of the Mirai Subclass against Defendants under federal law.

119.   Plaintiffs are consumers.

120.   Toyota and First Element are alter egos of each other and agents of each other.

121.   The Mirai relies on First Elements fueling station network.

122.   The fueling stations are so frequently down that they are unfit for use.

## DEMAND FOR JURY TRIAL

123.   Plaintiffs hereby demand trial by jury in this class action.

## PRAYER FOR RELIEF

124.   Wherefore, Plaintiffs pray for judgment as follows:

125.   For an order certifying this action as a class action under Fed. R. Civ. 23, defining the Classes as requested herein, finding that Plaintiffs are proper representatives of the Classes requested herein, and appointing Plaintiffs' counsel as Class Counsel.

126.   Injunctive relief to stop Toyota and First Element from hydrogen operations;

127.   For diminution in value as to vehicles and taxpayer funds;

128.   For incidental and consequential damages according to proof at trial;

129.   For treble damages;

130.   For punitive damages;

131.   For reasonable attorney's fees and costs of suit;

132.   For other further relief as the Court may deem just and proper;

133.   For $1,000,000,000.00 in damages.

**CLASS ACTION COMPLAINT**

1
2
3

Dated:  July 30, 2024                    **THE INGBER LAW GROUP**

4
5

*/s/ Jason M. Ingber*
Jason M. Ingber, Esq.
Attorneys for Plaintiffs

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28